IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Carlos Edward Martin and<br>Tashiana Anita Martin,<br><br>Plaintiffs,<br><br>vs.<br><br>Leon Lott, as representative for the<br>Office of the Richland County<br>Sheriff's Department; Deputies Ben<br>Fields and Joseph Clark, in their<br>individual capacities as deputies with<br>the Richland County Sheriff's<br>Department,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C/A No. 3:07-3782-JFA<br><br><br><br><br><br>ORDER |

This matter is before the court on the motion [dkt. # 64] of defendants Deputy Ben

Fields ("Deputy Fields") and Deputy Joseph Clark ("Deputy Clark")(together the

"Deputies"), each in his individual capacity, and Sheriff Leon Lott, in his official capacity

as representative of the Richland County Sheriff's Office, for summary judgment against

Carlos Martin ("Mr. Martin") and Tashiana Martin ("Mrs. Martin"). The parties have fully

briefed the motion and the court heard oral argument on February 4, 2010. This order serves

to announce the ruling of the court.

I.    Factual and Procedural Posture

This case arises out of an encounter between Mr. Martin and Deputy Fields on

October 24, 2005, when Deputy Fields was dispatched to Quail Run apartment complex in

Richland County, South Carolina based on a report of a suspicious individual. As Deputy Fields entered the complex in his patrol car, Mr. Martin followed behind in his car, allegedly playing music at a loud volume. Deputy Fields and Mr. Martin parked next to one another, and engaged in a verbal exchange. As a result, Deputy Fields allegedly took Mr. Martin to the ground, emptied an entire canister of mace on him, and placed Mr. Martin under arrest for breaching the peace. During the course of the exchange and arrest, Mrs. Martin, wife of Mr. Martin, came outside the apartment she shared with her husband at Quail Run and took several pictures with her camera phone, attempting to capture the exchange and subsequent arrest on video. Upon the arrival of other law enforcement officers, Mrs. Martin alleges that Deputy Fields directed another officer to confiscate the camera phone—which allegedly contained the pictures of the exchange and arrest. Mrs. Martin also alleges that the Deputies threw her against a vehicle, handcuffed her, forced her to the ground, and eventually placed her in the back of a police car. (Am. Compl. ¶ 18.)

Mr. and Mrs. Martin filed suit in state court in the Richland County Court of Common Pleas on October 17, 2007. Mr. Martin alleges, pursuant to 42 U.S.C. § 1983, illegal seizure, false arrest, and excessive force under the Fourth Amendment against Deputy Fields; and retaliation for exercising First Amendment rights against Deputy Fields. Mr. Martin also asserts state law claims of false imprisonment, false arrest, and battery against Sheriff Leon Lott, in his representative capacity. Mrs. Martin alleges, pursuant to § 1983, illegal seizure and excessive force under the Fourth Amendment against Deputy Clark; false arrest under

the Fourth Amendment against Deputy Fields; and retaliation for exercising First Amendment rights against Deputy Fields. Mrs. Martin also asserts state law claims of false imprisonment, false arrest, and battery against Sheriff Leon Lott, in his representative capacity.

Sheriff Leon Lott and the Deputies removed the case to this court on November 19, 2007. The court has at various times during the past two years issued three scheduling orders, stayed the case for approximately eleven months, and conferred with counsel on numerous occasions regarding a variety of matters. The discovery period ended on November 20, 2009, and Sheriff Leon Lott and the Deputies filed a motion for summary judgment on December 4, 2009. Trial is scheduled for the March 9, 2010 term of court.

II.    Discussion

A.    Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis omitted). A fact is material if proof of its existence or non-existence would affect

3

the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). An issue is genuine if the evidence offered is such that a reasonable jury might return a verdict for the nonmovant. Id. at 257. In cases where the parties dispute material facts, "the non-moving party is entitled to have his evidence as forecast assumed, his version of that in dispute accepted, and the benefit of all favorable inferences." Henson v. Liggett Group, Inc., 61 F.3d 270, 275 (4th Cir. 1995). Moreover, the court "may not make credibility determinations or weigh the evidence." Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

B.      False Imprisonment and False Arrest Pursuant to § 1983

The Fourth Amendment prohibits law enforcement officers from making unreasonable seizures; seizure absent probable cause is unreasonable. Miller v. Prince George's County, 475 F.3d 621 (4th Cir. 2007). "Probable cause" means "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. De Fillippo, 443 U.S. 31, 37 (1979). However, "[w]hile probable cause requires more than bare suspicion, it requires less than that evidence necessary to convict." United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998). Probable cause may be based on uncharged conduct. See, e.g., Davenpeck v. Alford, 543 U.S. 146, 154–56 (2004); Jackson v. City of Abbeville, 623 S.E.2d 656, 660 (S.C. App. 2005).

Two factors inform the determination of probable cause: "the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct." Prichett v. Alford, 973 F.2d 307, 314 (4th Cir. 1992). The rights of the plaintiff may be found violated "at this level of factual particularity if probable cause is lacking on either or both the factual knowledge or legal understanding components of the equation." Id. at 314. "As its name suggests, probable cause involves probabilities—judgment calls that are tethered to context and rooted in common sense." United States v. White, 549 F.3d 946, 947 (4th Cir. 2008). To prove an absence of probable cause to arrest under the Fourth Amendment, the arrestee must allege a set of facts which make it unjustifiable for a reasonable officer to conclude he is violating the law. Brown v. Gilmore, 278 F.3d 362 (4th Cir. 2002).

      1.     Mr. Martin Asserts Claims of False Arrest and False Imprisonment Against Deputy Fields

Mr. Martin asserts false arrest and false imprisonment against Deputy Fields. Taking the facts in the light most favorable to Mr. Martin, the relevant conduct is as follows. Mr. Martin followed Deputy Fields into Quail Run with his car windows partially down, playing music on his car stereo. Deputy Fields alleges, and Mr. Martin does not controvert, that he could hear music from Mr. Martin's car for a period of fifty seconds prior to Mr. Martin's car becoming visible to Deputy Fields and that the bass sound was pronounced.

Richland County ordinance Sec. 18–3 provides that:

It shall be unlawful for any individual within any residential zone of the

unincorporated areas of the county to use or operate any radio . . . including vehicular noise, in excess of sixty-two (62) decibels between the hours of 7:00 a.m. and 10:00 p.m. . . . or in a manner which is deemed to be excessive by the county sheriff's department.

(Defs.' Reply Supp. Summ. J. Ex. 1.)  Accordingly, because Deputy Fields could hear Mr. Martin's music well before he could see Mr. Martin's car round the turn (Fields Dep. 85:11–17), and also because the statute confers some discretion on the enforcing officer, the court finds that Deputy Fields could have reasonably concluded that Mr. Martin violated the noise ordinance, thus establishing probable cause sufficient to justify arresting him.

Deputy Fields also asserts that at the time of Mr. Martin's arrest, probable cause existed as to common law breach of peace, and for failure to exhibit license on demand pursuant to S.C. Code Ann. § 56-1-90 (2006).  Because the court finds that Deputy Fields established probable cause for violation of the noise ordinance, the court declines to analyze probable cause under the other asserted bases.

      2.     Mrs. Martin Asserts Claims of False Arrest Against Deputy Fields and Illegal Seizure Against Deputy Clark

Mrs. Martin asserts false arrest against Deputy Fields and illegal seizure against Deputy Clark.  The Deputies assert, in their motion for summary judgment, that probable cause existed to arrest Mrs. Martin for breach of peace and resisting arrest.  At the February 4, 2010 hearing, Deputies' counsel asserted for the first time that probable cause also existed to arrest Mrs. Martin for public disorderly conduct and obstruction of justice.

The facts relevant to the court's analysis of probable cause as to Mrs. Martin are as

follows. On October 24, 2005, at approximately 5:15 p.m., Mrs. Martin, responding to calls

from her neighbors, alighted from her apartment to find Deputy Fields subduing her husband.

She approached the scene of the arrest where Mr. Martin directed her to retrieve their

neighbor and acquaintance, Richland County law enforcement officer Sonya Goins. Mrs.

Martin, unsuccessful in her search for Sonya Goins, returned to within a couple of feet of the

scene of the arrest and began to take photos with her camera phone. (Mrs. Martin Dep.

156:7–157:2.) Dissatisfied with her phones' picture-taking capabilities, she returned to her

apartment to search for a more substantial video recorder. Unsuccessful in her search, she

returned again to the scene of the arrest and took several additional pictures with her camera

phone. Upon returning, Mrs. Martin exclaimed "what the hell are y'all doing to my

husband?" (Mrs. Martin Dep. 181:20–21.) Mrs. Martin then alleges that three officers,

including the Deputies, grabbed her and slammed her against a parked car. (Mrs. Martin

Dep. 183:16–184:12.) Mrs. Martin explicitly denies using profanity, swinging, kicking,

attempting to swing, or attempting to kick any of the officers at any time during the events

in dispute. (Mrs. Martin Dep. 181:9–183:1.)

The court notes that the defense of qualified immunity, and the probable cause

assertions for common law obstruction of justice and incitation to riot were not raised as to

Mrs. Martin in the Deputies' motion for summary judgment. Accordingly, the court declines

to assess the merits of a qualified immunity defense as to Mrs. Martin's claims. See

Buffington v. Baltimore County, 913 F.2d 113, 120–21 (4th Cir. 1990) (holding that a party

abandons its qualified immunity defense in a § 1983 action by not raising the issue clearly in the motion for summary judgment); see also Sales v. Grant, 224 F.3d 293, 296–97 (4th Cir. 2000). The court also notes that Mrs. Martin raised the absence of a qualified immunity defense in her response to the Deputies' motion for summary judgment and that the Deputies did not address the omission of the defense in their reply.

The court will address, out of caution—not out of necessity—the Deputies' contention, first raised at the hearing, that probable cause existed as to two previously unidentified and uncharged crimes. The court finds no prejudice as to Mrs. Martin in addressing these late-asserted claims as the court finds the Deputies did not establish probable cause under the facts as the court must view them. Had the facts suggested otherwise, the court would be constrained to deny the late-asserted claims as bases to establish probable cause because Mrs. Martin would be deprived of the opportunity to brief the matter.

a. Probable Cause as to Resisting Arrest

Deputies Fields and Clark assert probable cause to arrest Mrs. Martin for resisting arrest. No argument made in the Deputies' motion touches on either deputy's knowledge of Mrs. Martin's conduct in relation to the contours of breach of peace—the deputies appear to let their entire argument ride on the grand jury indictment for resisting arrest and the decision of the prosecutor to pursue the case. The court will address the asserted bases in turn.

I. The Grand Jury Indictment

The Deputies rely on S.C. Code Ann. § 16-9-320(b) to support their arrest of Mrs.

Martin. The relevant portions of that section provide:

> It is unlawful for a person to . . . to assault, beat, or wound an officer when the person is resisting an arrest being made by one whom the person knows or reasonably should know is a law enforcement officer, whether under process or not.

S.C. Code Ann. § 169-320(b)(2003). On June 23, 2006, the Richland County Grand Jury

returned a true bill, indicting Mrs. Martin and stating:

> That TASHIANA MARTIN did in Richland County on or about October 24, 2005 knowingly and willfully assault, beat or would Dep. B. Fields, a law enforcement officer of this State, while the officer was attempting to make a lawful arrest of said defendant in violation of 16-9-320(b), Code of Laws of South Carolina, (1976), as amended.

Deputies Fields and Clark assert that because the grand jury returned a true bill indictment

against Mrs. Martin for resisting arrest, the indictment provides sufficient basis to support

probable cause for resisting arrest.

The United States Supreme Court has held that "an indictment, fair upon its face, and

returned by a properly constituted grand jury, conclusively determines the existence of

probable cause." Gerstein v. Pugh, 420 U.S. 103 n.19 (1975). However, courts have

recognized that the return of a true bill does not foreclose a plaintiff from pursuing a claim

under the Fourth Amendment where there is evidence that the grand jury's deliberations were

tainted by the actions of the defendant. See e.g., Shields v. Twiss, 389 F.3d 142 (5th Cir.

2004), Cook v. McPherson, 273 F. Appx. 421 (6th Cir. 2008). Similarly, in Franks v.

Delaware, 438 U.S. 154 (1978), the United States Supreme Court recognized that an officer

violates the Fourth Amendment when he procures a search warrant through a false affidavit, and a magistrate would not have otherwise found probable cause. See also, Unus v. Kane, 565 F.3d 103, 124 (4th Cir. 2009).

In the malicious prosecution context, the Fourth Circuit has found that where a plaintiff was arrested pursuant to a warrant, "plaintiff's allegations that police seized him pursuant to a legal process that was not supported by probable cause and that the criminal proceedings terminated in his favor," the plaintiff states a claim under the Fourth Amendment. Miller v. Prince George's County, 475 F.3d 621 (4th Cir. 2007). The reasoning of the Franks and Miller courts applies with equal force where a defendant seeks to base probable cause on an indictment supported by a single affidavit that is alleged to be deficient because it is dishonest.

In each of the above scenarios, the required showing to successfully discredit an affidavit is the same: a plaintiff must show that the officer deliberately, or with reckless disregard for the truth, made material false statements in his affidavit. See Franks v. Delaware, 438 U.S. 154 (1978) (search warrant); Unus v. Kane, 565 F.3d 103 (4th Cir. 2009) (search warrant); Miller, 475 F.3d at 627 (malicious prosecution). Reckless disregard may be established through evidence showing an officer acted with a high degree of awareness of the statement's probable falsity. Id. ("when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported"). Material omission may be established

through evidence showing that a police officer failed to inform the judicial officer of facts he knew would negate probable cause. Id. Key to either assertion or omission is a showing of the materiality of the asserted or omitted information. To determine materiality, the court should excise the offending portions of the affidavit, and determine whether the corrected affidavit would establish probable cause. Id. In a motion for summary judgment, where a moving defendant seeks to rely on his affidavit, the court must view the affidavit in light of the facts alleged by the nonmoving party.

Deputy Fields' affidavit providing the basis for the grand jury's indictment states in its entirety:

> That on 10-24-05 while at 3509 Lake Ave Apt 1111 in the Dentsville Magistrate District of Richland County, one Tashiana A. Martin did commit the crime of Assault on Police while Resisting arrest in the she did with knowledge and intent assault above police officer as he was in the process of placing above subject's husband under arrest. Subject above run towards two R/O's swinging her arms and attempting to kick officer in the head. R/O placed hands on subject to effect arrest subject began cursing, swinging her arms and kicking at R/Os. This action caused injuries to R/Os. Affiant and others are witness to prove the same.

Mrs. Martin asserts that her testimony and the testimony of Mr. Martin, Ms. Lewis, and Mr. Abd' Allah Adasanya (Mrs. Martin Resp. to Mot. Summ. J. Ex. B) establishes that Mrs. Martin did not run towards the Deputies swinging her arms and attempt to kick any officer in the head, nor did she begin cursing, swinging her arms and kicking any officers when the Deputies attempted to effect the arrest. Mrs. Martin also asserts that Deputy Fields should have included information in his affidavit that Mrs. Martin was taking pictures, did not

attempt to interfere with the arrest, and did not curse the Deputies.

Resolving factual disputes in favor Mrs. Martin, and excising disputed material facts from Deputy Fields' affidavit, the court finds that a corrected affidavit would not support probable cause. Taking the evidence in the light most favorable to Mrs. Martin, a reasonable jury could find that the affidavit submitted by Deputy Fields contained material misrepresentations made deliberately or with reckless disregard for whether his statements made the affidavit misleading.[1]

### ii. Opinion of the Prosecuting Attorney

The Deputies assert that the fact that the Richland County Solicitor determined to initiate prosecution, and then pursued the case for three years, should suffice to establish probable cause existed at the time of Mrs. Martin's arrest. Essentially, the Deputies seek an inference that the solicitor's conduct evinces a legal judgment that probable cause existed. The Deputies cite a handful of cases for the proposition that law enforcement may rely on a prosecuting attorney for a determination as to whether probable cause exists. However the cases they cite pertain to consultation of an attorney prior to swearing out a warrant in relation to asserting a good faith defense to a malicious prosecution claim. See Melton v. Williams, 314 S.E.2d 612, 615 (S.C. App. 1984). The cases cited do not apply to the facts

---

[1] It should be emphasized that this court does not find that any misstatements or omissions occurred. Instead, the court finds that there is evidence from which a jury could conclude that misstatements and omissions occurred. See Miller v. Prince George's County, 475 F.3d 621, 628 (4th Cir. 2007) ("Perhaps [the officer] may ultimately persuade a factfinder, but this argument cannot prevail on summary judgment, for at this stage we do not find facts.").

of this case, nor are they easily analogized.

Based on the facts as the court must view them, and the above analysis concerning the Deputies' reliance on the indictment as evidence of probable cause, the court finds that the Deputies have not established probable cause as to the charge against Mrs. Martin for resisting arrest.

> b. Probable Cause as to Public Disorderly Conduct and Breach of Peace

In South Carolina, public disorderly conduct encompasses conduct "on any highway or at any public place or public gathering" whereby a person behaves "in a grossly intoxicated condition or otherwise conduct[s] himself in a disorderly or boisterous manner." S.C. Code Ann. § 16-17-530 (2003). Breach of peace comprises a rather broad swathe of conduct that destroys or menaces the public order and tranquility. State v. Poinsett, 157 S.E.2d 570, 571 (S.C. 1967). "In general terms a breach of peace is a violation of the public order, a disturbance of public tranquility, by any act or conduct inciting to violence, which includes any violation of any law enacted to preserve peace and good order." Id.

In the context of speech to a police officer, the South Carolina Supreme Court has construed S.C. Code Ann. § 16-17-530 as well as common law breach of peace, to require the use of fighting words "that by their very utterance inflict injury or tend to incite an immediate breach of peace." State v. Perkins, 412 S.E.2d 385 (S.C. 1991). Specifically in the context of speech toward police, the United States Supreme Court noted that the fighting words exception requires even more narrow construction of the statute as "a properly trained

13

officer may reasonably be expected to exercise a higher degree of restraint than the average citizen." City of Houston v. Hill, 482 U.S. 451 (1987). In Perkins, the South Carolina Supreme Court placed emphasis on the following: "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." Perkins, 412 S.E.2d at 386 (internal citation omitted). South Carolina courts to have considered S.C. Code Ann. § 16-17-530 appear to require more than profanity or merely raising one's voice to a police officer, though not more than yelling obscene language while intoxicated. Compare Perkins, 412 S.E.2d 412 (raising voice insufficient), and In re Jeremiah W., 606 S.E.2d 766 (S.C. 2004) (upholding directed verdict in favor of defendant where only profanity used), with State v. McGowan, 557 S.E.2d 657 (S.C. 2001) (sustaining jury verdict where there was evidence of intoxication and obscenity toward police), and State v. Pittman, 537 S.E.2d 563 (S.C. App. 2000) (upholding an arrest for public disorderly conduct where defendant is both grossly intoxicated and uses obscene language toward arresting officers); see also Landrum v. Sarratt, 572 S.E.2d 476 (S.C. App. 2002) (discussing words constituting fighting words, noting that use of "fuck" absent directed and repetitive use is not punishable); State v. LaCoste, 553 S.E.2d 464 (S.C. App. 2002) (classifying as fighting words the repeated shouting of obscenities where accompanied by challenges to the officers, and taunts regarding the officers' lack of success in bringing the suspect under control).

In light of the facts as the court must view them, the record appears to suggest that

Mrs. Martin, at most, raised her voice to the Deputies and employed mild profanity.  In light of State v. Perkins, 412 S.E.2d 385, the court finds that Mrs. Martin's language, in context, does not rise to the level of fighting words and that Deputies Fields and Clark lacked probable cause to arrest her for public disorderly conduct or breach of peace.

### c.    Probable Cause as to Obstruction of Justice

The Deputies asserted at the hearing that probable cause existed to arrest Mrs. Martin for common law obstruction of justice.  Under South Carolina common law, "it is an offense to do any act which prevents, obstructs, impedes, or hinders the administration of justice." State v. Cogdell, 257 S.E. 748 (S.C. 1979).  However, as the Deputies fail to direct the court to the conduct they assert provides the basis for probable cause as to common law obstruction of justice, the court is left to assume that the Deputies rely on Mrs. Martin's alleged swinging and profanity, which conduct she has flatly denied.  As the court must resolve all factual disputes in favor of Mrs. Martin, any reliance upon Mrs. Martin's alleged swinging and profanity cannot support probable cause for common law obstruction of justice.

### d.    Probable Cause as to Inciting a Riot

The Deputies assert that probable cause existed to arrest Mrs. Martin for inciting a riot.  They direct the court to S.C. Code Ann. § 16-5-130 (2003), which prohibits a person to riot, participate in a riot, or incite or promote a riot.  However, pursuant to State v. Alls, S.C. Code Ann. § 16-5-130 applies solely to riots concerning civil rights, and is inapplicable as applied to the facts of this case.  Accordingly, the Deputies have failed to establish

15

probable cause as to inciting a riot.

C.      Mr. and Mrs. Martin Assert Claims of Excessive Force Pursuant to § 1983

The alleged applications of excessive force occurred during the course of the sequential arrests of Mr. and Mrs. Martin, implicating their respective Fourth Amendment rights. See Orem v. Rephann, 523 F.3d 442, 446 (4th Cir. 2008). In evaluating whether a claim of excessive force was unreasonable under the Fourth Amendment, the court should assess "whether the force used to carry out a particular arrest balances the nature and quality of the intrusion on the individual's Fourth Amendment interest against the importance of the governmental interests alleged to justify the intrusion." Martin v. Gentile, 849 F.2d 863, 868 (4th Cir. 1988). The right to make an arrest comes with the right to "use the amount of force that a reasonable officer would think necessary to take the person being arrested into custody." Id. at 869. Accordingly, liability for even serious injury inflicted during an arrest depends on whether the officer acted reasonably, taking into account the split-second judgments often necessary in tense, dangerous environments. In short, the more exigent the circumstance, the more the arresting officer can do. Id.

However, if the injuries suffered by either Mr. or Mrs. Martin were de minimus, the Fourth Amendment does not recognize his or her claim. Fourth Circuit caselaw appears to require more than de minimus injury in the Fourth Amendment context. See Carter v. Morris, 164 F.3d 215, n.3 (4th Cir. 1999) (finding no excessive force where tight handcuffs and a push of the plaintiff's leg constituted extent of injury); but see Jones v. Buchanan, 325

F.3d 520, n.8 (4th Cir. 2003) (stating that the difference between the Fourth and Fourteenth Amendment analysis is the Fourteenth Amendment's required showing of misconduct amounting to punishment and that results in more than de minimus injury).  When assessing the character of a de minimus injury, albeit in the Fourteenth Amendment context, the Fourth Circuit has held that "temporary swelling and irritation is precisely the type of injury this court considers de minimus."  Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998); see also Stanley v. Hejirika, 134 F.3d 629, 637–38 (4th Cir.1998) (holding that "bruising of his right arm, left jaw, left and right wrists and back, and a tooth which was loosened" constituted de minimus injury); Cox v. Gaskins, 2003 WL 23857306, at *2 (E.D.N.C. May 30, 2003) (finding that two lacerations to plaintiff's head and an injury to his nose were de minimus injuries).

     1.     Excessive Force as to Mr. Martin

The alleged excessive force applied to Mr. Martin consists of Deputy Fields allegedly cuffing Mr. Martin's right hand, slamming him to the ground, kneeing him several times, and then emptying a canister of mace on him.  Mr. Martin's primary argument is that because Deputy fields lacked probable cause to arrest, any force was excessive.  His alternative argument posits that Deputy Fields's actions were excessive under the circumstances, as Mr. Martin complied with all of Deputy Fields's commands up to the point when Deputy Fields deployed mace.

Mr. Martin asserts that he suffered abrasions and bruises, as well as post traumatic

stress disorder as a result of the force applied during his arrest. However, the court finds that his injuries fall within the Fourth Circuit's definition of de minimus injury because Mr. Martin asserts no injury beyond scrapes and abrasions, and points to no evidence in the record that the deployment of the mace caused any more than temporary, minor irritation. Accordingly, Mr. Martin's injuries are not constitutionally cognizable under the Fourth Amendment.

### 2. Excessive Force as to Mrs. Martin

Mrs. Martin alleges that the Deputies jointly grabbed her and slammed her into the bumper of a patrol car. She claims injuries including a neck that was "a little stiff" and back pain; the hospital issued her pain medication and discharged her without further treatment. At no point since the incident has she sought medical attention. Accordingly, Mrs. Martin appears to allege only de minimus injury and her claim for excessive force is denied. See, e.g., Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998); Foster v. Metro. Airports Comm'r, 914 F.2d 1076, 1082 (8th Cir. 1990) (We do not believe that [Plaintiff's] allegations of pain as a result of being handcuffed, without some evidence of more permanent injury, are sufficient to support his claim of excessive force.").

### D. First Amendment Retaliation Claims Pursuant to § 1983

Both Mr. Martin and Mrs. Martin allege retaliation in response to First Amendment activities. To establish a First Amendment retaliation claim, a plaintiff must establish three elements: (1) that the speech was protected, (2) that the defendant's alleged retaliatory action

adversely affected the constitutionally protected speech, and (3) that a causal relationship existed between the speech and the defendant's retaliatory action. Trulock v. Freeh, 275 F.3d 391 (4th Cir. 2001). Speech is protected if it is a matter of public concern. Whether speech touches on the public concern turns on whether its content, form and context affect the societal, political, or general well-being of a community. See Edwards v. City of Goldsboro, 178 F.3d 231, 246 (4th Cir. 1999); Scruggs v. Keen, 900 F. Supp. 821 (W.D.Va. 1995).

### 1.    Mr. Martin's First Amendment Claim

Mr. Martin asserts that his attempt to question his arrest resulted in his arrest. However, as Deputy Fields established probable cause prior to arresting Mr. Martin, the court finds it highly unlikely that Deputy Fields arrested Mr. Martin as a result of engaging in any protected conduct. Furthermore, Mr. Martin's questioning of Deputy Fields also appears to be more of a matter of personal interest, rather than speech of public concern. Because Mr. Martin does not adequately show that his speech was protected, and because he fails to demonstrate sufficient causation between his comments and his arrest, he fails to state a claim under the First Amendment.

### 2.    Mrs. Martin's First Amendment Claim

Mrs. Martin asserts that her attempts to photograph the Deputies' conduct toward her husband resulted in her arrest. To prevail she must establish the three elements set forth above. First, Mrs. Martin must establish that her attempts to record her husband's arrest was protected speech. Mrs. Martin attempted to photograph what she perceived as wrongful

government conduct.  <u>See</u> <u>Hurley v. Irish American Gay, Lesbian and Bisexual Group of</u>

<u>Boston</u>, 515 U.S. 557, 569 (1995); <u>see also</u> <u>Massachusetts v. Oakes</u>, 491 U.S. 576, 591–92

(1989) ("the Constitution looks beyond written or spoken words as a medium for expression)

(Brennan, J., dissenting).  She was, in effect, criticizing government action, which is plainly

a matter of public concern.  Accordingly, she appears to have been engaged in protected

activity.

Second, Mrs. Martin must show that the Deputies interfered with her speech.  Here,

the Deputies arrested Mrs. Martin, which inhibited additional photography of her husbands

arrest.  Her arrest satisfied this element.

Third, Mrs. Martin needs to show a causal relationship between her photography and

the Deputies' conduct.  Based on the facts as the court must view them, the Deputies arrested

Mrs. Martin while she was photographing an arrest, and without probable cause.  The facts

suggest that a reasonable jury could conclude that the Deputies may have arrested her in

reaction to her photography. Because the Deputies lacked probable cause to arrest her, and

because seized her camera and deleted pictures of the arrest off of it, a reasonable jury could

find for Mrs. Martin based on her version of the facts.

Based on the foregoing, Mrs. Martin states a colorable First Amendment claim, while

Mr. Martin does not.

E.     State-Law Claims Against Sheriff Leon Lott in his Representative Capacity
        Under The South Carolina Tort Claims Act

Mr. and Mrs. Martin assert claims for false imprisonment, false arrest, and battery. These claims are not asserted against the Deputies in their individual capacity, but rather against Sheriff Leon Lott, as the Deputies' representative under the South Carolina Tort Claims Act ("SCTCA"), S.C. Code Ann. § 15-78-70(c) (2005). However, it is well established under South Carolina law that a county sheriff is a state official and immune from suit in federal courts pursuant to the Eleventh Amendment. <u>Gulledge v. Smart</u>, 691 F. Supp. 947, 954 (D.S.C. 1988), <u>aff'd</u> 878 F.2d 379 (4th Cir. 1989) (unpublished table decision); <u>see also</u> <u>Stewart v. Beaufort County</u>, 481 F. Supp. 483, 492 (D.S.C. 2007). Because Mr. and Mrs. Martin assert SCTCA claims solely against Sheriff Leon Lott, this court lacks jurisdiction to hear the state-law claims. <u>Gulledge</u>, 691 F. Supp. at 954. Accordingly, pursuant to 28 U.S.C. § 1447(c), and because this case was originally removed to from state court, this court must remand the state-law claims. <u>Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.</u>, 74 F.3d 46, 49 (4th Cir. 1996) (plain language of § 1447 compels remand rather than dismissal without prejudice); <u>see also</u>, Wisconsin v. Dep't of Corr. v. Schacht, 524 U.S. 381, 392–93 (1998) (a federal court can proceed to hear properly removed claims after remanding claims barred by the Eleventh Amendment)

III.    <u>Conclusion</u>

Based on the foregoing, the court grants the Deputies' motion for summary judgment as to Mr. Martin on all claims, and as to the claim of excessive force asserted by Mrs. Martin.

Mrs. Martin's § 1983 claims for illegal seizure and false arrest, and retaliation in violation of the First Amendment remain for trial. Because the court finds that it lacks jurisdiction to hear Mr. Martin's and Mrs. Martin's claims against Sheriff Leon Lott pursuant to the Eleventh Amendment, those claims are remanded to the Richland County Court of Common Pleas.

The trial of this case will proceed as scheduled during the March/April 2010 term of court. Jury selection will take place on March 9, 2010.

IT IS SO ORDERED.

Joseph F. Anderson Jr.

February 9, 2010                           Joseph F. Anderson, Jr.
Columbia, South Carolina                   United States District Judge